MILTON COHEN and MILDRED COHEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cohen v. Commissioner
Docket No. 6832-80.
United States Tax Court
T.C. Memo 1985-471; 1985 Tax Ct. Memo LEXIS 158; 50 T.C.M. (CCH) 1010; T.C.M. (RIA) 85471; September 10, 1985. Kalman V. Gallop, for the petitioners. John E. Becker, Jr., for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: *159 Respondent determined the following deficiencies and additions to petitioners' Federal income taxes: Addition to Tax
Taxable Year
Deficiency
Sec. 6653(b) *[1]
1969
$19,683.00
$7,807.00
1970
8,640.00
2,969.00
1972
99.00
1973
70.00
The issues for decision are (1) whether petitioners received gross income from illegal kickbacks in the amount of $37,550.00 and $15,350.00 for the taxable years 1969 and 1970 respectively, which amounts were not reported on their income tax returns for those years, (2) whether any part of the alleged underpayment for 1969 was due to fraud with intent to evade income tax pursuant to section 6653(b), and (3) whether the statute of limitations bars assessment of the deficiency in tax for the taxable year 1969. FINDINGS OF FACT *160 Some of the facts have been stipulated and are found accordingly. Milton Cohen (hereinafter petitioner) and Mildred Cohen, husband and wife, at the time of the filing of their petition, resided at 4900 North Travelers Palm Lane, Tamarac, Florida 33319. Petitioners filed joint Federal income tax returns for the taxable years in question. Petitioner was employed by Big Apple Super Markets, Inc. (hereinafter Big Apple) for approximately two weeks in July 1969, and then from September 1969 through January 1970. Petitioner was fired from Big Apple on or about February 2, 1970. Petitioner was hired to assist in Big Apple's meat department, and did so by ordering meat to fill the needs of the stores in the Big Apple chain. Beyond those responsibilities, petitioner also performed other functions for which he was compensated by other than Big Apple. Moe Steinman, the principal in several corporate meat brokerage firms, made an agreement with petitioner to pay petitioner money in exchange for having Big Apple buy its meat from certain suppliers who were previously supplying Big Apple. Petitioner received the total sum of $8,000 from Steinman--$2,000 each month for the months of October *161 1969, November 1969, December 1969, and January 1970 payable after the first of the following months. Payments were made in cash in plain envelopes marked only with his initials. He received the payments surreptitiously from Steinman in various places other than where he did business. Pursuant to Steinman's instructions, one-half of the payments with respect to the first three months, or $1,000.00 per month, was turned over to Alvin Bernstein, the petitioner's cousin, who also worked for Big Apple. This arrangement ended when petitioner's employment with Big Apple was terminated in early February 1970. When he filed his return in 1969, which was prepared by a Certified Public Accountant, and which was quite detailed in other respects, he omitted these illegal cash payments. In conjunction with the monthly payments made directly to petitioner, Steinman made additional payments to Irving Stern, an official of the Union Local 342 of the Amalgamated Meat Cutters and Butcher Workers of North America, for the benefit of Big Apple. Petitioner also received unreported income from Frank Strassburger in the amount of $4,800.00 in 1969 and $3,600.00 in 1970. Petitioner was indicted *162 on five counts on March 21, 1974, in the Southern Judicial District of New York, in which Counts One and Three charged petitioner with violating section 7201 [2] for taxable years 1969 and 1970 respectively. On May 8, 1974, petitioner entered a plea of guilty to the charge set forth against him in Count Three of the indictment (violation of section 7201 for the taxable year 1970). The United States District Court entered its judgment pursuant to the plea of guilty on December 16, 1974 and sentenced petitioner to 60 months in prison, which was suspended, placed him on probation for 36 months, and fined him $10,000. Petitioner stipulated that he is precluded, under the doctrine of collateral estoppel, from denying that he willfully filed a false *163 and fraudulent return for 1970, with the intent to evade part of his income tax due, and also from denying that there is an underpayment of his income tax for 1970 which was due to fraud. He has agreed, therefore, that he is liable for an addition to tax pursuant to section 6653(b) for the taxable year 1970. The parties have agreed, however, that petitioner is not precluded from contesting the amount of the underpayment for 1970. OPINION The Commissioner's determination of deficiencies set forth in the notice is presumptively correct. Petitioners bear the burden of proving that the deficiency amounts are incorrect. ; Rule 142(a). Conversely, respondent bears the burden of proof with respect to the issue of fraud. Rule 142(b). Petitioner does not contest the fraud addition for 1970 which leaves respondent to his proof for the tax year 1969 only. Petitioner's case rested solely upon petitioner's testimony. Milton Cohen admits receiving "kickbacks" for the years 1969 and 1970. He also admits that he failed to report these payments in 1969 or 1970. He does, however, dispute respondent's contention that he received *164 more than $8,000. Petitioner testified that for his part in the illegal scheme, he received a total of $8,000: $4,000 in 1969 and $4,000 in 1970. This arrangement ended with the January 1970 payment because he ceased to be employed by Big Apple in early February 1970. Petitioner's testimony about the receipt of the sum of $8,000 was uncontradicted by any other evidence save the testimony of respondent's witness, Moe Steinman. There is no other evidence to support petitioner's figures, nor is there independent evidence to support Moe Steinman's recollection of the sum paid. [3] The Court is left with the difficult problem of deciding which of the two stories about illegal activities is more worthy of belief. Respondent's witness, Moe Steinman, was able to recall with certainty what he had paid petitioner approximately 15 years before the trial. Steinman testified that petitioner "averaged about $8-12,000 a month," while altruistically Steinman for his part in this scheme received "nothing at all." Steinman testified that he "was just a delivery boy." Later, *165 however, during cross-examination, Steinman admitted to having received $170,000 above his salary which was related in part to the activities involved here. When asked whether he (Steinman) knew it was a crime in 1969 to pay off labor officials, Steinman testified that he did not know it was a crime. Although Steinman knew there was a case pending in Federal court at the time of trial about his tax liability, he repeatedly testified that he had not even the vaguest idea of how much money was involved. Steinman testified that he had been in jail for "about 6 months," but when asked for what crime, he responded "I don't quite recall." When asked whether he had pled guilty to the crime he could not recall, he testified "I pleaded guilty," but "I don't recall what it was." When asked about others, Steinman's retrospective vision is unhampered by confusion, and unqualifiedly certain; when asked about himself, Steinman's acuity suddenly disappears and he testifies that he cannot recall. Obviously, Steinman's memory is far too selective to be given any weight. We find that respondent's witness is totally unworthy of belief. On the other hand, although not a candidate for "Mr. Integrity, *166 " petitioner came through to the Court as more believable, and therefore, we hold for petitioner on the issue regarding the amounts received from Steinman for 1969 and 1970. In addition, we find that with respect to the amounts due for October, November, and December 1969, payable in November and December 1969 and January 1970, petitioner passed $1,000.00 each month along to Alvin Bernstein. Therefore, with respect to these payments from Steinman, petitioner received and failed to report a net amount of $2,000.00 in 1969 and $3,000.00 in 1970. A portion of the omitted income determined by the respondent was $3,750.00 for 1969 and $750.00 for 1970, representing cash payments made by Steinman to Irving Stern, a Union official, for the purpose of assuring labor peace. Respondent argues that these payments were made on petitioner's behalf. Petitioner argues that he was merely an employee of Big Apple, and that payments for labor peace were for the benefit of Big Apple, and not for petitioner, and therefore, these amounts should not be taxed to him. Again, the illegal nature of these payments requires their concealment, and a general befogging of the record surrounding them. However, *167 we find petitioner's position to be more reasonable, and therefore, with respect to these payments, we hold for petitioner. The notice of deficiency determined that petitioner received from a Frank Strassburger the amounts of $4,800.00 for 1969 and $3,600.00 for 1970. Petitioner concedes in his letter in lieu of a reply brief that, "[t]here is absolutely no evidence whatsoever in the record of this trial in support of these two items." Accordingly, the presumption in favor of the correctness of respondent's determination must prevail, and we find that petitioner had income from Frank Strassburger in the amount of $4,800.00 in 1969 and $3,600.00 in 1970. Petitioners have conceded the deficiencies for the years 1972 and 1973 in the amounts of $99.00 and $70.00, respectively. We are thus left with the question of whether or not the period of assessment for 1969 had expired. Generally, the amount of any tax shall be assessed within three years after the return was filed. Section 6501(a). Pursuant to section 6501(c)(1), when a false or fraudulent return with the intent to evade tax is filed, assessment of the tax may be made at any time. Thus, if fraud were proven by respondent *168 on the part of petitioner for 1969, assessment of the tax would not be barred. Respondent, as aforementioned, bears the burden of proving by clear and convincing evidence as to 1969 that part of an underpayment was due to fraud. Rule 142(b); ; . The existence of fraud is a question of fact to be resolved upon consideration of the entire record. . Fraud will never be presumed, but rather must be established by affirmative evidence. . Direct proof of the taxpayer's intent is rarely available. Fraud may, however, be proven by circumstantial evidence. ; . Mere negligence is not proof of fraud; an intent or purpose to evade tax is essential. , affd. sub nom. . *169 Petitioner has admitted that he received $4,000.00 in 1969 from Steinman in connection with the illegal kickback scheme. These payments were made in cash in plain envelopes marked only with his initials. He received the payments surreptitiously from Steinman in various places other than where he did business. When he filed his return for 1969, which was prepared by a Certified Public Accountant, and which was quite detailed in other respects, he omitted these illegal cash payments. The entire course of conduct relating to these illegal activities, and the record as a whole supports the conclusion that these payments were omitted from petitioner's income tax return for the year 1969 with the intent to evade tax, and accordingly, we find fraud pursuant to section 6653(b). As a result of this finding that petitioner's return was a fraudulent return with intent to evade tax, the assessment of tax is not barred by the statute of limitations. It is, therefore, unnecessary to consider whether the waivers of the statute of limitations executed by petitioner operate to extend the period of assessment. To reflect the foregoing and previous concessions made by the parties, Decision *170 will be entered under Rule 155.
Footnotes
*. With respect to the section 6653(b) addition to tax, respondent concedes that petitioner Mildred Cohen is an innocent spouse pursuant to section 6013(e). ↩
1. Unless indicated otherwise, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Rules of Practice and Procedure of this Court.↩
2. Sec. 7201. ATTEMPT TO EVADE OR DEFEAT TAX. Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.↩
3. Obviously in a situation involving illegal payoffs and kickbacks, no records are kept of the cash transferred.↩